# EXHIBIT B

2022CV00864

e-Filed 4/28/2022 11:04 PM

*Tiki Brown*
Tiki Brown
Clerk of State Court
Clayton County, Georgia
Dalaya Whyte-Gustave

**IN THE STATE COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

DAVID THIGPEN and REGINA THIGPEN, as
Surviving Parents of Jerelyn Thigpen, deceased;

JAMES J. DALTON, II, as proposed Administrator of
the Estate of Jerelyn Thigpen;

PIETER TEEUWISSEN and LISA TEEUWISSEN, as
Surviving Parents of Maya E. Teeuwissen;

NINA N. TEEUWISSEN and LIA N. TEEUWISSEN,
as Administratrices of the Estate of Maya E.
Teeuwissen;

JEVONTE J. SMITH, as Surviving Parent of Alexander
Pieter Smith; and

PIETER TEEUWISSEN and LISA TEEUWISSEN, as
Administrators of the Estate of Alexander Pieter Smith,

      Plaintiffs,

v.

NISSAN MOTOR CO., LTD.;
NISSAN NORTH AMERICA, INC.;
SADDLE CREEK TRANSPORTATION INC.;
ORLANDO OZELL JOHNSON;
ZURICH AMERICAN INSURANCE COMPANY;
POCH STAFFING INC.;
JOHN DOE CORPORATIONS 1-5; and
JOHN DOES 1-5,

      Defendants.

Civil Action File No.   2022CV00864

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

    This action arises from a traffic crash that resulted in a vehicle fire.  Maya E. Teeuwissen

and her three-year-old son survived the wreck but burned to death in the post-collision fire.

Jerelyn Thigpen was rescued from the fire and survived three months before succumbing to her

injuries.

**PARTIES, JURISDICTION, AND VENUE**

1.1. Jerelyn Thigpen ("Jerelyn"), decedent, died as a result of the subject crash described herein. Jerelyn died without a spouse or surviving children.

1.2. Plaintiff James J. Dalton, II ("Dalton") is the proposed administrator of Jerelyn Thigpen's estate. By filing this Complaint, Dalton submits to the jurisdiction of this Court. Dalton is a citizen and resident of the State of Georgia.

1.3. Plaintiff David Thigpen ("David") is the father and next of kin of Jerelyn. By filing this Complaint, David submits to the jurisdiction of this Court.

1.4. Plaintiff Regina Thigpen ("Regina") is the mother and next of kin of Jerelyn. By filing this Complaint, Regina submits to the jurisdiction of this Court. Regina is a citizen and resident of the State of Georgia.

1.5. Maya Elizabeth Teeuwissen ("Maya"), decedent, who died as a result of the subject crash described herein. Maya was the mother of minor child Alexander Pieter Smith, who also died as a result of the subject crash described herein.

1.6. Plaintiffs Pieter Teeuwissen ("Pieter") and Lisa Teeuwissen ("Lisa") are the Surviving Parents of Maya. By filing this Complaint, Pieter and Lisa submit to the jurisdiction of this Court.

1.7. Joshua Teeuwissen, Nina Teeuwissen, and Lia Teeuwissen are biological siblings of Maya. Plaintiffs Nina Teeuwissen ("Nina") and Lia Teeuwissen ("Lia") are the Administratrices of Maya Teeuwissen's Estate. By filing this Complaint, Nina and Lia submit to the jurisdiction of this Court.

1.8. Alex Pieter Smith ("Alex") is the minor decedent of Maya. Alex died as a result of the subject crash described herein. Alex died without a spouse or surviving children.

[2]

1.9.   Plaintiffs Pieter Teeuwissen and Lisa Teeuwissen are the Administrators of Alex's Estate.

1.10.   Plaintiff Jevontae J. Smith ("Jevontae") is the father and next of kin of deceased minor Alex Pieter Smith.  By filing this Complaint, Jevontae submits to the jurisdiction of this Court.

1.11.   Defendant Saddle Creek Transportation Inc. ("Saddle Creek") is a foreign, for-profit corporation authorized to do business in Georgia, with its principal office located in Florida.  At all times relevant to this Complaint, Saddle Creek was engaged in the business of over-the-roadway trucking and transportation.

1.11.1.   Saddle Creek may be served through its registered agent Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

1.11.2.   Venue is proper in this Court as to Saddle Creek because it is a joint tortfeasor with one or more of the named defendants.

1.11.3.   This Court has personal jurisdiction over Saddle Creek because it is registered to do business in Georgia, and maintains a registered agent for service of process in this State.

1.11.4.   Further, this Court has personal jurisdiction over Saddle Creek because:

1.11.4.1.   It regularly does business in Georgia, solicits business in Georgia, derives substantial revenue from goods or services in Georgia, has agents, representatives, officers, or employees in Georgia, maintains multiple offices in Georgia, and has subsidiaries or business affiliates in Georgia;

1.11.4.2.   Its tortious conduct described herein caused personal injury and death in this State;

1.11.4.3.   This action arises under Saddle Creek's contact with this State;

[3]

1.11.4.4. Georgia has an interest in adjudicating this dispute, which occurred in Georgia, has already been investigated by Georgia law enforcement officers, and involved the assessment of conduct that occurred in Georgia; and

1.11.4.5. Allowing Saddle Creek to escape jurisdiction would improperly allow it to wield the Due Process Clause as a territorial shield to avoid interstate obligations that Saddle Creek has voluntarily assumed.

1.12. Defendant Zurich American Insurance Company ("Zurich") is a for-profit, foreign insurance company with its principal place of business located at 1076 Harrisburg Pike, Carlisle, Pennsylvania, 17013.  Zurich may be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

1.12.1. Plaintiffs have named Zurich under Georgia's Direct-Action Statute, codified at O.C.G.A. § 46-7-12 as they are the insurer of Saddle Creek, a motor carrier.

1.12.2. Jurisdiction is proper as to Zurich because: (a) Zurich maintains a registered agent in Georgia, and (b) Georgia's Direct-Action statute authorizes this direct action under O.C.G.A. § 40-1-112(c) and 40-2-140(c)(4).

1.12.3. Venue is proper as to Zurich pursuant to O.C.G.A. § 33-4-1(4).

1.13. Defendant Poch Staffing, Inc. ("Poch") is a foreign, for-profit corporation authorized to do business in Georgia, with its principal office located in Michigan.

1.13.1. Poch operates its business under the trade name "Trillium Staffing Solutions."  At all times relevant to this Complaint, Poch was engaged in the business of providing drivers to commercial motor carriers and other transportation businesses.

[4]

2022CV00864

1.13.2. Poch may be served through its registered agent Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

1.13.3. Venue is proper in this Court as to Poch because it is a joint tortfeasor with one or more of the named Defendants.

1.13.4. This Court has personal jurisdiction over Poch because it is registered to transact business in Georgia and maintains a registered agent for service of process in this State.

1.13.5. Further, this Court has personal jurisdiction over Poch because:

1.13.5.1. It regularly does business in Georgia, solicits business in Georgia, derives substantial revenue from goods or services in Georgia, has agents, representatives, officers, or employees in Georgia, and has subsidiaries or business affiliates in Georgia;

1.13.5.2. This action arises under Poch's contact with Georgia;

1.13.5.3. Its tortious conduct described herein caused personal injury and death in this State;

1.13.5.4. Georgia has an interest in adjudicating this dispute, which occurred in Georgia, has already been investigated by Georgia law enforcement officers, and involved the assessment of conduct that occurred in Georgia; and

1.13.5.5. Allowing Poch to escape jurisdiction would improperly allow it to wield the Due Process Clause as a territorial shield to avoid interstate obligations that Poch has voluntarily assumed.

1.14. Defendant Orlando Johnson ("Johnson") is a citizen and resident of the State of Georgia. At all times relevant to this Complaint, Johnson was an employee of Saddle Creek and/or Poch acting in the course and scope of his employment. This court has

[5]

personal jurisdiction over Johnson because he is a citizen of Georgia. Venue is

appropriate in Clayton County because Johnson is a resident of Clayton County.

Johnson can be served at his home at 3033 Anvil Block Road, Ellenwood, Georgia,

30294.

1.15. Defendant Nissan Motor Co., Ltd. is a foreign corporation organized under the laws of

Japan, with its principal office located in Tokyo, Japan. At all relevant times, Nissan

Motor Co., Ltd. was doing business throughout the United States, including the state of

Georgia for-profit and has systematic, continuous, and substantial contacts with

Georgia, which are sufficient to satisfy due process. Nissan Motor Co., Ltd. may be

served with process via registered mail with a Summons and Complaint pursuant to

Article 10(a) to The Convention on The Service Abroad of Judicial or Extrajudicial

Documents in Civil or Commercial Matters, commonly referred to as The Hague

Convention at 1-1, Takashima 1- chome, Nishi-ku, Yokohama-shi, Kanagawa 220-

8686, Japan.

1.16. Defendant Nissan North America, Inc. ("Nissan") is a foreign business entity

incorporated in California with its headquarters in Tennessee. At all times pertinent to

this Complaint, Nissan was and is in the business of designing, manufacturing,

marketing, promoting, advertising, and selling motor vehicles, including the Subject

Vehicle involved in the incident described herein.

1.16.1. Nissan can be served at its registered agent Corporation Service Company, at 2

Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

1.16.2. Venue is proper in this Court as to Nissan because it is a joint tortfeasor with one

or more of the named Defendants.

1.16.3. This court has personal jurisdiction over Nissan because it is registered to do

[6]

business in Georgia and maintains a registered agent in this state.

1.16.4. Nissan is further subject to the jurisdiction of the Court for, among others, the following reasons:

1.16.4.1. Nissan regularly transacts business and derives profits from business activities in Georgia and maintains a registered agent in this state;

1.16.4.2. This action arises under Nissan's contact with Georgia; and

1.16.4.3. A non-resident defendant is subject to personal jurisdiction under the Georgia long-arm statute by virtue of doing business in Georgia, by contracting with Georgia residents pursuant to contracts to be performed in part in Georgia, and/or by committing torts where one or more elements of the tort occurred in Georgia.  Nissan has engaged in such business and/or conduct in Georgia.

1.16.5. It knowingly, intentionally, and deliberately placed the Subject Vehicle into the stream of commerce under circumstances such that Nissan should reasonably anticipate being hauled into court in Georgia to answer claims about the failure of its product in Georgia;

1.16.6. Its tortious conduct described herein caused personal injury and death in this State;

1.16.7. It has continuously and deliberately exploited Georgia's motor vehicle market and should reasonably anticipate being hauled into a Georgia court to defends its actions based on its products causing injury in Georgia;

1.16.8. Nissan is a global auto company, and it does business everywhere;

1.16.9. Nissan intentionally ships vehicles to Georgia for sale to Georgia residents;

1.16.10. It regularly does business in Georgia, solicits business in Georgia, derives

[7]

substantial revenue from goods or services in Georgia, has agents, representatives, officers, or employees in Georgia, maintains an office in Georgia, and has subsidiaries or business affiliates in Georgia;

1.16.11. It places its products into the stream of commerce by targeting Georgia consumers through approved Nissan dealerships in Georgia;

1.16.12. It has been a party seeking relief or review in numerous cases where it has purposefully availed itself of the jurisdiction of the courts of Georgia by serving as the plaintiff, petitioner, appellant, or removing party in such cases;

1.16.13. It has a regular plan for the distribution of its products in Georgia with the goal of achieving a commercial benefit from the sale, service, and warranting of products in Georgia;

1.16.14. It engages in national marketing of its products that intentionally pervade into the Georgia market;

1.16.15. It targets marketing specifically to Georgia;

1.16.16. It oversees aspects of its product warranty process from within Georgia;

1.16.17. It sends product warnings in a variety of formats related to Nissan vehicles into Georgia;

1.16.18. It sends recall notices related to safety defects into Georgia;

1.16.19. It directs Georgia customers to approved Nissan service centers in Georgia for recall replacement even when vehicles needing such replacement were originally sold to buyers in states other than Georgia;

1.16.20. Nissan, among other activities, advertised, sold, and serviced the 2012 Nissan Altima at issue in Georgia;

[8]

2022CV00864

1.16.21. Nissan encourages the resale market of its vehicles, and its Dealerships in Georgia sell used Nissan vehicles.

1.16.22. It gathers data about the performance of its vehicles in Georgia and uses that data in the redesign of its products;

1.16.23. It derives hundreds of millions of dollars a year from sales of products in Georgia;

1.16.24. It holds patents and trademarks which it demands must be honored in Georgia;

1.16.25. It has contractual agreements with Georgia companies to use its trademarks in Georgia;

1.16.26. It has purposefully availed itself of the privilege and benefits of conducting business in Georgia;

1.16.27. Its negligent acts both inside and outside Georgia caused injury within Georgia;

1.16.28. The claims in this action are connected with and/or related to Nissan's extensive contacts with Georgia;

1.16.29. Georgia has an interest in adjudicating this dispute, which occurred in Georgia, has already been investigated by Georgia law enforcement officers, and involved the assessment of conduct that occurred in Georgia, as well as products that failed in Georgia; and

1.16.30. Allowing Nissan to escape jurisdiction would improperly allow Nissan to wield the Due Process Clause as a territorial shield to avoid interstate obligations that Nissan has voluntarily assumed.

1.17. Nissan North America Inc. is a wholly owned subsidiary of Nissan Motor Co., Ltd., and the two entities are jointly referred to as "Nissan" throughout this Complaint.

1.18. Defendant(s) John Doe Corporations 1-5 are fictitious entities whose identities are not

[9]

known at this time, but who were engaged in the manufacture, sale, installation, and service of the Subject Vehicle and its parts, or were otherwise negligent and caused or contributed to the injuries of Jerelyn, Maya, Alex, and Plaintiffs.

1.19. John Doe(s) 1-5 are fictitious persons whose identities are not known at this time but were engaged in the manufacture, sale, installation, and service of the Subject Vehicle and its parts, or were otherwise negligent and caused or contributed to the injuries of Jerelyn, Maya, Alex, and Plaintiffs.

1.20. All Defendants are subject to the jurisdiction and venue of this court.  Plaintiffs have not stated any causes of action implicating any federal questions.  As one or more of the Plaintiffs and Defendants in this action are citizens of Georgia, this civil action may not be removed to federal court under 28 U.S.C. § 1441(b)(2).  Plaintiffs note that the improper removal of this case should be remedied by a remand with an award of all costs, expenses, and fees including, but not limited to, attorneys' fees under 28 U.S.C. § 1447(c).

## 2.  OPERATIVE FACTS

2.1.  On October 10, 2020, Jerelyn was the driver of a 2012 Nissan Altima car with a VIN of 1N4AL2AP1CN560139 ("Subject Vehicle").

2.2.  Jerelyn was properly seated in the front driver's seat, wearing her seatbelt.

2.3.  On October 10, 2020, Alex and Maya were passengers in the Subject Vehicle.

2.4.  Maya was wearing her seatbelt at all times relevant to this Complaint.

2.5.  Alex was properly secured in a DOT certified child seat at all times relevant to this Complaint.

2.6.  Jerelyn was traveling at a reasonable and prudent speed and maintaining a proper lookout ahead.

[10]

2.7.  On October 10, 2020, Johnson was the driver of a 2015 Freightliner Tractor-trailer truck with a VIN of 1FUJGEBG9FLGK4440 ("Saddle Creek's vehicle").

2.8.  At all times relevant to this complaint, Saddle Creek's vehicle was owned by Saddle Creek.

2.9.  At approximately 08:56 p.m. on October 10, 2020, Jerelyn was traveling eastbound in the left lane on Interstate 20 east bound, in Douglas County, Georgia, near mile-marker 30.

2.10.  At the same time, Johnson was traveling eastbound in the right lane of Interstate 20, in front of Jerelyn.

2.11.  At some point, Saddle Creek's vehicle struck the Subject Vehicle, and the Subject Vehicle became pinned under Saddle Creek's vehicle.

2.12.  Johnson stopped his vehicle with the Subject Vehicle still pinned underneath the truck.

2.13.  The Subject Vehicle burst into flames.

2.14.  Jerelyn, Alex, and Maya were trapped in the burning vehicle.

2.15.  Several passing motorists stopped at the scene of the fire and helped remove Jerelyn from the burning vehicle.

2.16.  Firefighters arrived on the scene, but the flames and heat from the fuel-fed fire were too intense, and they could not rescue Alex and Maya from the vehicle.

2.17.  Alex and Maya died inside the vehicle due to thermal injuries.

2.18.  Jerelyn suffered catastrophic bodily injuries from the fire and required immediate emergency medical treatment away from the scene of the wreck.

2.19.  Jerelyn was transported to Grady Memorial Hospital.

2.20.  Jerelyn was treated at Grady Memorial Hospital for third degree burns to her body and later transferred to Emory University Hospital.

[11]

2022CV00864

2.21. Jerelyn spent 104 days in the hospital until she died of her injuries on January 22, 2021.

2.22. Jerelyn died as a direct result of the injuries she sustained in the crash and ensuing fire.

2.23. Jerelyn, Alex, Maya, and Plaintiffs did not do any act, nor did they fail to do any act, which proximately caused the Subject Wreck and fire.

2.24. At all times pertinent to this Complaint, upon information and belief, Johnson was an employee, statutory employee, and/or agent of Poch.

2.25. At all times pertinent to this Complaint, upon information and belief, Johnson was an employee, statutory employee, and/or agent of Saddle Creek.

2.26. At all times pertinent to this Complaint, upon information and belief, Johnson was acting within the course and scope of his employment or agency with Poch.

2.27. At all times pertinent to this Complaint, upon information and belief, Johnson was acting within the course and scope of his employment or agency with Saddle Creek.

2.28. At all times pertinent to this Complaint, upon information and belief, Poch is liable for Johnson's negligent acts and/or omissions on October 10, 2020, under respondeat superior and/or other forms of vicarious liability.

2.29. At all times pertinent to this Complaint, upon information and belief, Saddle Creek is liable for Johnson's negligent acts and/or omissions on October 10, 2020, under respondeat superior and/or other forms of vicarious liability.

2.30. Defendants anticipated litigation to arise from the Subject Wreck.

2.31. Nissan designed, manufactured, marketed, and sold the Subject Vehicle.

2.32. The Subject Vehicle was manufactured and/or assembled at the Nissan factory in Canton, Mississippi.

[12]

2.33. The Subject Vehicle, including its fuel system, was defective at the time it shipped from the Nissan factory in Canton, Mississippi.

2.34. The Subject Vehicle was unchanged from its manufactured condition at the time it was sold.

2.35. The Subject Vehicle was unchanged from its manufactured condition at the time Jerelyn was operating the vehicle.

2.36. The defective nature of the Subject Vehicle caused the fire after the Subject Wreck.

2.37. The occurrence of the Subject Wreck, and/or a wreck substantially similar to the Subject Wreck, were reasonably foreseeable to Nissan.

2.38. As a result of the Subject Wreck and fire, Jerelyn, Alex, and Maya suffered severe injuries, which resulted in their deaths. Those injuries, proximately caused by this collision and the resulting fire, have resulted in substantial subsequent damages, both economic and non-economic, including, but not limited to, medical bills, costs, and expenses, past, present, and future economic loss, past physical pain and suffering prior to death, past mental and psychological pain and suffering, and their wrongful deaths.

## 3. **COUNT ONE: NEGLIGENCE OF JOHNSON**

3.1. The safety of others should be of paramount concern to a professional truck driver operating a tractor-trailer.

3.2. On October 10, 2020, Johnson owed to Jerelyn and the Plaintiffs, specifically, and the public, generally, duties of care while operating a commercial vehicle on the public highways of Georgia.

3.3. On October 10, 2020, it was reasonably foreseeable to Johnson that if he operated his vehicle negligently or recklessly, such negligence or recklessness could result in a collision and grievous physical injury to others.

[13]

3.4.   At all relevant times, Johnson owed certain civil duties to Jerelyn, Alex, and Maya and, notwithstanding those duties, Defendant Johnson violated them in the following ways:

3.4.1.   In failing to make reasonable and proper observations while driving or, if reasonable and proper observations were made, failing to act thereon;

3.4.2.   In failing to observe or undertake the necessary precautions to keep his truck from colliding with Subject Vehicle in violation of O.C.G.A. § 40-6-390, which violation caused injury to Plaintiffs and constitutes negligence *per se*; and

3.4.3.   In committing other negligent and reckless acts and omissions as may be shown by the evidence and proven at trial.

3.5.   Defendant Johnson negligently operated the tractor-trailer truck causing the collision with the Subject Vehicle.

3.6.   As a proximate result of Johnson's negligence described above, Jerelyn, Alex, Maya, and Plaintiffs suffered severe personal injuries and special and general damages in an amount to be determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

3.7.   As a direct and proximate result of the Subject Wreck, Jerelyn, Alex, and Maya sustained serious injuries to their bodies which resulted in their wrongful deaths.

3.8.   As a direct and proximate result of Johnson's negligence, Jerelyn, Alex, Maya, and Plaintiffs incurred the following damages for which Plaintiffs are entitled to recover from Defendants: past pain and suffering, past medical expenses, past funeral expenses, and the full value of Jerelyn, Alex, and Maya's lives as determined by a fair and impartial jury based upon the evidence presented at a trial for this matter.

[14]

3.9.   As the proximate result of Johnson's negligence, Plaintiffs suffered general damages with an exact amount to be determined by the enlightened conscience of a fair and impartial jury based upon the evidence presented at a trial for this matter.

3.10.   As a direct and proximate result of Johnson's negligence, Jerelyn incurred medical expenses, in an amount to be proven at trial, for the treatment of her injuries caused solely and proximately by Defendants.

3.11.   As a direct and proximate result of Johnson's negligence, Jerelyn, Alex, and Maya died, and Plaintiffs are entitled to receive the full value of their lives as determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

3.12.   Saddle Creek, along with Johnson, is liable for all damages due to Plaintiffs under Georgia law, including reasonable attorneys' fees.

3.13.   Johnson, along with Saddle Creek and/or Poch, is liable for all damages due to Plaintiffs under Georgia law, including reasonable attorneys' fees.

## 4.   COUNT TWO: LIABILITY OF SADDLE CREEK

4.1.   A company that authorizes or enables its employees and/or agents to operate vehicles in furtherance of company business should ensure that its employees operate the corporation's vehicles in the safest manner reasonably possible.

4.2.   Saddle Creek accepts no responsibility for the Subject Wreck, or the injuries and damages caused to Jerelyn, Alex, Maya, and Plaintiffs.

4.3.   The safety of those who share the road with its commercial vehicles should be of paramount concern to Saddle Creek's professional drivers.

4.4.   At the time Saddle Creek hired Johnson, Saddle Creek was required to perform a background check, including acquiring a driving history of any potential employee that would be responsible for driving a Saddle Creek vehicle.

[15]

4.5.   Saddle Creek is liable to Plaintiffs on one or more of the following grounds:

    4.5.1.   Saddle Creek is liable under the doctrines of respondeat superior, vicarious liability, and/or statutory employer liability for the tortious acts and omissions of its agent and/or employee or statutory employee, Johnson, in the Subject Wreck;

    4.5.2.   Saddle Creek is liable for its own negligent entrustment of its vehicle to Johnson at the date and time of this incident;

    4.5.3.   Saddle Creek is liable for failing to properly instruct, train, and/or supervise its employee(s) and/or agent(s), that inspected, serviced, or otherwise performed maintenance on Saddle Creek's vehicle;

    4.5.4.   Saddle Creek is liable for failing to properly instruct, train, and/or supervise its employee(s) and/or agent(s), who operated Saddle Creek's vehicle;

    4.5.5.   Saddle Creek is liable for failing to properly instruct, train, and/or supervise its employee and/or agent, Johnson, the driver it placed in its vehicle, to drive upon the public highways; and/or

    4.5.6.   Saddle Creek is or may be liable for failing to institute and/or enforce, either expressly or by implication, policies, and practices which encouraged its drivers to operate vehicles in a safe and prudent manner.

4.6.   Defendant Saddle Creek negligently hired, retained, and/or supervised Johnson.

4.7.   Saddle Creek negligently entrusted their vehicle to Johnson when Saddle Creek knew or should have known that its driver, Johnson, was incompetent or unfit to perform the duties given to him by the company.

4.8.   As a proximate result of Saddle Creek's negligence described above, Jerelyn, Alex, Maya, and Plaintiffs suffered severe personal injuries and both special and general

[16]

damages in an amount to be determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

4.9.  As a direct and proximate result of the Subject Wreck, Jerelyn, Alex, and Maya sustained serious injuries to their bodies which resulted in their wrongful death.

4.10.  As a direct and proximate result of Saddle Creek's negligence, Jerelyn, Alex, Maya, and Plaintiffs incurred the following damages for which Plaintiffs are entitled to recover from Defendants: past pain and suffering, past medical expenses, past funeral expenses, and the full value of the Jerelyn, Alex, and Maya's lives as determined by a fair and impartial jury based upon the evidence presented at a trial for this matter.

4.11.  As the proximate result of Saddle Creek's negligence, Plaintiffs suffered general damages with an exact amount to be determined by the enlightened conscience of a fair and impartial jury based upon the evidence presented at a trial for this matter.

4.12.  As a direct and proximate result of Saddle Creek's negligence, Jerelyn incurred medical expenses, in an amount to be proven at trial, for the treatment of her injuries caused solely and proximately by Defendants.

4.13.  As a direct and proximate result of Saddle Creek's negligence, Jerelyn, Alex, and Maya died, and Plaintiffs are entitled to receive the full value of their lives as determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

4.14.  Saddle Creek, along with Johnson, is liable for all damages due to Plaintiffs under Georgia law, including reasonable attorneys' fees.

## 5.  COUNT THREE: DIRECT ACTION AGAINST ZURICH

5.1.  Saddle Creek is a motor carrier or motor contract carrier pursuant to O.C.G.A. § 40-1-100.

[17]

5.2. Zurich issued an insurance policy (policy # PAP DUOA 40695) to Saddle Creek that was in full force and effect on October 10, 2020.

5.3. Plaintiffs sustained actionable injuries in the Subject Wreck on October 10, 2020.

5.4. The Subject Wreck involved a truck that was covered by the policy of insurance (policy # PAP DUOA 40695) Zurich issued to Defendant Saddle Creek.

5.5. Zurich is named as a party under Georgia's direct-action statute (O.C.G.A. § 46-7-12).

6. **COUNT FOUR: LIABILITY OF POCH**

6.1. Poch, as part of its business, provides commercial motor carriers with allegedly licensed and vetted commercial drivers.

6.2. Some of the services advertised by Poch to its commercial motor carrier customers include the selection, recruitment, screening, and drug testing of potential commercial drivers.

6.3. A company that authorizes or enables its employees to operate commercial vehicles in furtherance of company business should ensure that its employees operate the corporation's vehicles in the safest manner reasonably possible.

6.4. The safety of those who share the road with its commercial vehicles should be of paramount concern to Poch's professional drivers.

6.5. Poch is liable to Plaintiffs on one or more of the following grounds:

6.5.1. Poch is liable under the doctrines of respondeat superior, vicarious liability, and/or statutory employer liability for the tortious acts and omissions of its agent and/or employee or statutory employee, Johnson, in the Subject Wreck;

6.5.2. Poch is liable for failing to properly instruct, train, and/or supervise its employee and/or agent, Johnson, the driver it placed in Saddle Creek's vehicle, to drive upon the public highways; and/or

[18]

2022CV00864

    6.5.3.  Poch is or may be liable for failing to institute and/or enforce, either expressly or

by implication, policies and practices which encouraged its drivers to operate

vehicles in a safe and prudent manner.

6.6.  Poch negligently hired, retained, and supervised Johnson.

6.7.  As a proximate result of Poch's negligence described above, Jerelyn, Alex, Maya, and

Plaintiffs suffered severe personal injuries and both special and general damages in an

amount to be determined by the enlightened conscience of a fair and impartial jury at a

trial for this matter.

6.8.  As a direct and proximate result of the Subject Wreck, Jerelyn, Alex, and Maya

sustained serious injuries to their bodies which resulted in their wrongful deaths.

6.9.  As a direct and proximate result of Poch's negligence, Jerelyn, Alex, Maya, and

Plaintiffs incurred the following damages for which Plaintiffs are entitled to recover

from Defendants: past pain and suffering, past medical expenses, past funeral expenses,

and the full value of the Jerelyn, Alex, and Maya's lives as determined by a fair and

impartial jury based upon the evidence presented at a trial for this matter.

6.10.  As the proximate result of Poch's negligence, Plaintiffs suffered general damages with

an exact amount to be determined by the enlightened conscience of a fair and impartial

jury based upon the evidence presented at a trial for this matter.

6.11.  As a direct and proximate result of Poch's negligence, Jerelyn incurred medical

expenses, in an amount to be proven at trial, for the treatment of her injuries caused

solely and proximately by Defendants.

6.12.  As a direct and proximate result of Poch's negligence, Jerelyn, Alex, and Maya died,

and Plaintiffs are entitled to receive the full value of their lives as determined by the

enlightened conscience of a fair and impartial jury at a trial for this matter.

[19]

6.13.  Poch, along with Johnson, is liable for all damages due to Plaintiffs under Georgia law, including reasonable attorneys' fees.

## 7.  COUNT FIVE – STRICT PRODUCTS LIABILITY AS TO NISSAN

7.1.  As a manufacturer of products, Nissan owes a duty to the general public not to sell unreasonably dangerous or defective products.

7.2.  Nissan owes a duty to Jerelyn, Alex, Maya, and Plaintiffs to ensure products it offers for sale are not unreasonably dangerous or defective.

7.3.  Nissan engaged in the manufacture of vehicles, which were sold in Georgia to various wholesalers and retailers for distribution to the general public as ultimate consumers.

7.4.  The Subject Vehicle was in a defective condition and unreasonably dangerous for reasonably foreseeable use.  The breach of that duty by Nissan and the defective condition of the Subject Vehicle was the proximate cause of the injuries sustained by Jerelyn, Alex, and Maya.

7.5.  As a proximate and direct result of Nissan's negligence, the Subject Vehicle's fuel system failed to remain intact during normal and foreseeable use.

7.6.  As a result of the fuel system's failure, Alex, and Maya were killed in the ensuing fire, and Jerelyn later died as a result of her injuries sustained in the Subject Wreck.

7.7.  Because of Nissan's defective vehicle, Defendant Nissan is strictly liable to Plaintiffs for damages.

7.8.  As a proximate result of Nissan's defective vehicle described above, Jerelyn, Alex, Maya, and Plaintiffs suffered severe personal injuries and both special and general damages in an amount to be determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

[20]

7.9.   As a direct and proximate result of Nissan's defective vehicle, Jerelyn, Alex, and Maya sustained serious injuries to their bodies which resulted in their wrongful death.

7.10.   As a direct and proximate result of Nissan's defective vehicle, Jerelyn, Alex, Maya, and Plaintiffs incurred the following damages for which Plaintiffs are entitled to recover from Defendants: past pain and suffering, past medical expenses, past funeral expenses, and the full value of the Jerelyn, Alex, and Maya's lives as determined by a fair and impartial jury based upon the evidence presented at a trial for this matter.

7.11.   As the proximate result of Nissan's defective vehicle, Plaintiffs suffered general damages with an exact amount to be determined by the enlightened conscience of a fair and impartial jury based upon the evidence presented at a trial for this matter.

7.12.   As a direct and proximate result of Nissan's defective vehicle, Jerelyn incurred medical expenses, in an amount to be proven at trial, for the treatment of her injuries caused solely and proximately by Defendants.

7.13.   As a direct and proximate result of Nissan's defective vehicle, Jerelyn, Alex, and Maya died, and Plaintiffs are entitled to receive the full value of their lives as determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

7.14.   Nissan is liable for all damages due to Plaintiffs under Georgia law, including reasonable attorneys' fees.

8.  **COUNT SIX: NEGLIGENCE OF NISSAN**

8.1.   At the time of the Subject Incident, the Nissan was engaged in the business of designing, developing, manufacturing, testing, furnishing, inspecting, selling and/or distributing vehicles, including the Subject Vehicle, throughout the United States, including the State of Georgia, for use by the general public.

[21]

8.2.   Nissan owed a duty to the consuming public, in general, and Jerelyn, Alex, and Maya, in particular, to exercise reasonable care in the design, development, manufacture, testing, furnishing, inspection, marketing, and distribution of their vehicles, including the Subject Vehicle, that was free of unreasonable risk of harm to owners, users, and occupants, including Jerelyn, Alex, and Maya.

8.3.   Nissan negligently designed, manufactured, assembled, serviced, inspected, tested, or failed to test, marketed, distributed, and sold the Subject Vehicle and its component parts involved in the Subject Wreck.

8.4.   At the time of the Subject Wreck, the Subject Vehicle, which was in substantially the same condition as when manufactured, furnished, sold, and/or distributed, was being used in a foreseeable and intended manner, as it was being driven on the roadway.

8.5.   The Subject Vehicle was not reasonably safe when being used in a foreseeable and intended manner but, to the contrary, was defective and unreasonably dangerous to the human body when being so used.

8.6.   Nissan knew, or in the exercise of reasonable care should have known, that the Subject Vehicle was unreasonably dangerous to the human body when being so used in a foreseeable manner, as its fuel system was improperly designed, creating an unreasonable risk of serious injury to operators and occupants from fires.

8.7.   At the time Nissan designed, manufactured, assembled, serviced, inspected, tested, or failed to test, marketed, distributed, and sold the Subject Vehicle, it had a duty to exercise reasonable care in order to provide a safe product and to design, manufacture, assemble, service, inspect, test, market, distribute, and sell the product so as not to subject operators and occupants of the vehicle to an unreasonable risk of injury, harm or death.

[22]

8.8.   Further, Nissan had a duty to foreseeable operators and occupants of the Subject Vehicle to exercise the same degree of care, diligence, and skill in designing, manufacturing, inspecting, testing, marketing, distributing, and selling the Subject Vehicle as other similar entities would have exercised.

8.9.   It was foreseeable to Nissan that if they designed, manufactured, distributed, and sold defective and unreasonably dangerous vehicles with defectively and/or dangerously designed fuel systems and components, including fuel tanks and fuel lines that were not adequately shielded from impact during foreseeable crashes, operators and occupants of such vehicles would be subject to an increased, significant risk of severe personal injury and/or death.

8.10.  Nissan breached their duty of care and was negligent in the following acts and omissions:

8.10.1. By negligently designing, manufacturing, distributing, and selling the Subject Vehicle with a fuel tank, fuel lines, and other components that were not adequately guarded or shielded from impacts during foreseeable collisions;

8.10.2. By negligently failing to consider safer, alternative designs for moving the fuel tank, fuel lines, and other components to a location outside the impact zone;

8.10.3. By negligently designing, manufacturing, distributing, and selling the Subject Vehicle with fuel tank, fuel lines, and other components located in an improper position and location, which increases the likelihood that these components would be impacted in foreseeable crash circumstances;

8.10.4. By negligently designing, manufacturing, distributing, and selling the Subject Vehicle, which was unreasonably susceptible to causing a fire in foreseeable and expected collisions;

[23]

8.10.5. By negligently designing, manufacturing, distributing, and selling the Subject Vehicle without reasonable protection to operators and/or occupants in foreseeable and expected collisions, including protection from post-collision fuel-fed fires; and

8.10.6. By negligently failing to reasonably inspect and test the vehicles to discover defects in them, including adequate crash testing.

8.11. The unreasonably dangerous nature of the Subject Vehicle and its component parts as described herein created a high probability that serious injury and/or death would occur when the Subject Vehicle was involved in a foreseeable collision.

8.12. At all times relevant herein, the impact and fatal post-crash fuel-fed fire experienced by Jerelyn, Alex, and Maya in this crash would not have created the type of injuries they sustained, but for the unreasonably dangerous condition of the Subject Vehicle when sold and the unsuitability of its fuel system and components.

8.13. By negligently designing, testing, or failing to test, manufacturing, marketing, and selling the Subject Vehicle, Nissan failed to use that degree of care, diligence, and skill as other similar entities in that it failed to conduct adequate testing and to adopt safer, practical, feasible, and otherwise reasonable alternate designs that could have been reasonably adopted and would have prevented Jerelyn, Alex, and Maya's injuries without substantially impairing the usefulness, practicality, or desirability of the Subject Vehicle and its component parts.

8.14. As a proximate result of Nissan's defective vehicle described above, Jerelyn, Alex, Maya, and Plaintiffs suffered severe personal injuries and both special and general damages in an amount to be determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

[24]

8.15. As a direct and proximate result of Nissan's defective vehicle, Jerelyn, Alex, and Maya sustained serious injuries to their bodies which resulted in their wrongful deaths.

8.16. As a direct and proximate result of Nissan's defective vehicle, Jerelyn, Alex, Maya, and Plaintiffs incurred the following damages for which Plaintiffs are entitled to recover from Defendants: past pain and suffering, past medical expenses, past funeral expenses, and the full value of the Jerelyn, Alex, and Maya's lives as determined by a fair and impartial jury based upon the evidence presented at a trial for this matter.

8.17. As the proximate result of Nissan's negligence, Plaintiffs suffered general damages with an exact amount to be determined by the enlightened conscience of a fair and impartial jury based upon the evidence presented at a trial for this matter.

8.18. As a direct and proximate result of Nissan's negligence, Jerelyn incurred medical expenses, in an amount to be proven at trial, for the treatment of her injuries caused solely and proximately by Defendants.

8.19. As a direct and proximate result of Nissan's negligence, Jerelyn, Alex, and Maya died, and Plaintiffs are entitled to receive the full value of their lives as determined by the enlightened conscience of a fair and impartial jury at a trial for this matter.

8.20. Nissan is liable for all damages due to Plaintiffs under Georgia law, including reasonable attorneys' fees.

9. **COUNT SEVEN: NISSAN'S FAILURE TO WARN**

9.1. From the time that the Subject Vehicle was designed, marketed, distributed, sold, and placed into the stream of commerce until the present day, Nissan was and continues to be aware of the dangerous and defective design of the Subject Vehicle.

9.2. Nissan, as the designer, manufacturer, seller, and/or distributor of the Subject Vehicle and its component parts, had a duty warn requiring them to adequately warn the public,

[25]

including foreseeable owners, operators, and passengers, such as Jerelyn, Alex, and Maya, about the hazards and dangerous conditions related to the use and operation of the Subject Vehicle in its intended manner as other manufacturers and distributors, would have exercised.

9.3.  Nissan, as the designer, manufacturer, seller, and/or distributor of the Subject Vehicle and its component parts, has a continuing duty to warn the public, including foreseeable owners, operators, and passengers, such as Jerelyn, Alex, and Maya, of its defects.

9.4.  The absence of warnings and/or adequate warnings and instructions created an unreasonably dangerous condition and risk to foreseeable owners, operators, and passengers of the Subject Vehicle that Nissan knew or should have known about in the exercise of ordinary care.

9.5.  Nissan breached said duty and failed to warn the public, including foreseeable owners, operators, and passengers, such as Jerelyn, Alex, and Maya, of the unreasonably dangerous condition of the Subject Vehicle.

9.6.  As a direct and proximate result of the breach by Nissan of the continuing legal duty to warn, Jerelyn, Alex, and Maya suffered catastrophic injuries, which lead to their deaths.

9.7.  Plaintiffs seek damages from Nissan for past, present, and future lost wages, pain, and suffering, and for the full value of the life of Jerelyn, Alex, and Maya in an amount to be shown by the evidence at trial.

10. **COUNT EIGHT: PUNITIVE DAMAGES AS TO NISSAN**

10.1.  Prior to the Subject Vehicle's design, manufacture, and sale, due to Nissan's knowledge of existing circumstances and conditions, Nissan knew that the fuel tank

[26]

2022CV00864

and its components were inadequately shielded, and that the location of the Subject

Vehicle's fuel tank, fuel lines, and other components increased the likelihood that these

components would be impacted in foreseeable crash circumstances.

10.2. Despite this knowledge, Nissan manufactured and sold the Subject Vehicle without

proper shielding to protect the fuel tank, fuel lines, and other components from such

impacts during foreseeable crash circumstances.  Nissan further failed to warn Jerelyn,

Alex, or Maya of its unreasonably dangerous design.

10.3. Nissan knew that the design of the Subject Vehicle failed to meet industry standards at

the time of manufacture.

10.4. Nissan knew of other catastrophic injuries and deaths arising out of substantially

similar and foreseeable collisions involving the defective design of similar vehicles.

10.5. Nissan knew there was an unreasonably dangerous propensity for the fuel tank, fuel

lines, and other components to ignite during a foreseeable collision, thereby creating a

significant hazard of serious personal injury or death to foreseeable users, operators,

and occupants, including Jerelyn, Alex, and Maya.

10.6. Despite this knowledge, Nissan put the Subject Vehicle in the stream of commerce and

failed to warn consumers of its danger, including specifically Jerelyn, Alex, and Maya.

10.7. As a result of Nissan's conscious disregard for the rights and safety of Jerelyn, Alex,

and Maya and/or its willful and wanton conduct laid out in detail above, Jerelyn, Alex,

and Maya suffered catastrophic injuries that led to their deaths.

10.8. Such willful and wanton actions showed willful misconduct, malice, fraud,

wantonness, oppression, and/or that entire want of care which would raise the

presumption of conscious indifference to the consequences of their actions and entitles

Plaintiffs to an award of punitive damages.

[27]

2022CV00864

## 11. <u>DAMAGES CLAIMED BY PLAINTIFFS</u>

11.1. Plaintiffs claim monetary damages against Defendants:

11.1.1. For all components of the mental and physical pain and suffering experienced by Jerelyn, Alex, and Maya before impact, upon impact, following the impact during the fire, and any treatment following the Subject Wreck, in an amount to be determined by the enlightened conscience of a fair and impartial jury at the time of trial for this matter;

1.1.1. For the full value of the lives of Jerelyn, Alex, and Maya, in an amount to be determined by the enlightened conscience of a fair and impartial jury at the time of trial for this matter;

1.1.2. For the full value of Jerelyn's 2012 Nissan Altima, which was totaled as a result of the wreck caused by Defendants' negligence;

1.1.3. For past, present, and future costs incurred as a result of the Subject Wreck including, past medical bills, past funeral expense, and other expenses that will be proven at the time of trial for this matter; and

1.1.4. For punitive damages as to Nissan.

## 12. **WHEREFORE Plaintiffs pray that they are granted the following relief:**

12.1. That a copy of the Summons and Complaint be served upon each Defendant;

12.2. That Plaintiffs have a trial by jury as to each and every appropriate issue;

12.3. A judgment against each Defendant;

12.4. Judgment for Plaintiffs against each Defendant for the full value for the lives of Jerelyn, Maya, and Alex;

12.5. Judgment for Plaintiffs against each Defendant for past medical, funeral, and other expenses;

[28]

12.6. Judgment for Plaintiffs against each Defendant for past pain and suffering;

12.7. The recovery of the full value of Jerelyn's vehicle;

12.8. An award of Punitive damages from Nissan;

12.9. All compensatory, general, nominal, consequential, and incidental damages on all

applicable claims in an amount to be proven at trial, and, as allowed by law, for such

damages to be trebled or multiplied upon proof of claims under laws allowing for

trebling or multiplying of compensatory damages based upon Defendants' violations of

law;

12.10. The recovery of reasonable attorneys' fees and expenses of litigation;

12.11. That all costs of this action be cast against Defendants; and

12.12. Any and all such further relief as the Court may deem just and appropriate.

This 28th day of April 2022.

WETHERINGTON LAW FIRM, PC

/s/ Matthew Q. Wetherington
MATTHEW Q. WETHERINGTON
Georgia Bar No. 339639
ROBERT N. FRIEDMAN
Georgia Bar No. 945494
ELI J. COHEN
Georgia Bar No. 862571

1800 Peachtree St. NE
Atlanta, GA 30309
404-888-3333
matt@wfirm.com
robert@wfirm.com
eli@wfirm.com

[29]